**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

CHAD BRYANT and BRANDI BRYANT,

Plaintiffs,

v.

HOPE CREDIT UNION; DOVENMUEHLE MORTGAGE, INC; I-10 PROPERTIES LLC; SHAPIRO AND BROWN, LLC; and JOHN DOES 1-10,

Defendants.

Case No. 1:19-cv-00249-LG-RHW

**DOVENMUEHLE MORTGAGE, INC'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

COMES NOW, Dovenmuehle Mortgage, Inc. ("DMI"), a named Defendant in the above-styled civil action, and files this Brief in Support of its Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6), respectfully showing this Honorable Court as follows:

**STATEMENT OF FACTS**

This action relates to the real property located at 12221 Vidalia Road, Pass Christian, Mississippi 39571 (the "Subject Property"). [Doc. 22, ¶ 1]. Around September 11, 2009, Plaintiffs Chad and Brandi Bryant ("Mr. Bryant" and "Ms. Bryant" respectively, the "Plaintiffs" collectively) purchased the Subject Property by executing a Deed of Trust in favor of Hope Credit Union ("Hope FCU"). [Doc. 22, ¶ 10]. Plaintiffs allege that the Deed of Trust is a written contract between the Plaintiffs and HOPE FCU. [Doc. 22, ¶ 11]. According to the Plaintiffs, on January 1, 2018, Hope FCU transferred servicing of the loan to DMI, but no notice was sent by either HOPE FCU or DMI regarding the transfer. [Doc. 22, ¶¶ 14, 16]. Plaintiffs contend that

they sent payments to HOPE FCU on February 4th and 8th of 2019, but these payments were later returned due to the acceleration of their loan. [Doc. 22, ¶¶ 17, 22, 27].

Plaintiffs contend that they called someone from either HOPE FCU or DMI, but were not informed of the acceleration, and also that no notices were mailed to the Subject Property. [Doc. 22, ¶¶ 20, 30]. The Subject Property was sold at foreclosure sale on February 22, 2019. [Doc. 22, ¶ 23]. According to Plaintiffs, they first learned of the foreclosure sale when they received a "Demand for Vacate Notice" from the purchaser at foreclosure, I-10 Properties. [Doc. 22, ¶ 29]. On March 15, 2019, Plaintiffs filed this action seeking injunctive relief and asserting counts for Wrongful Foreclosure, RESPA violations, Breach of Contract, and violations of the FDCPA. [Doc. 1-1]. DMI removed this action to federal court on April 22, 2019. [Doc. 1]. On June 14, 2019, this Court granted DMI's Motion to Dismiss, and also granted Plaintiffs leave to amend their Complaint. [Doc. 21]. Accordingly, on July 1, 2019, Plaintiffs filed their Second Amended Complaint. [Doc. 22].

## ARGUMENT AND CITATION OF AUTHORITY

### A. Standard of Review

This Court may grant a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) if the Complaint fails to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). In considering a motion to dismiss, the Court must treat all well-plead allegations of the Complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal

conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Therefore, "[d]ismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995); *Matter of Parker*, 655 Fed. Appx. 993, 996 (5th Cir. 2016).

**B. Plaintiffs have Failed to State a Claim under RESPA**

Plaintiffs' Complaint alleges that DMI failed to send several notices in violation of the Real Estate Settlement Procedures Act ("RESPA") and its corresponding C.F.R requirements. [Doc. 22, ¶¶ 64, 66, 70]. Specifically, Plaintiff contends that DMI violated 12 C.F.R. §§ 1024.39(a) and 1024.39(b)(2) regarding certain notices after delinquency and 12 C.F.R. § 1024.36(d) regarding requests for information. [Doc. 22, ¶¶ 64, 66, 70]. However, only 12 C.F.R. § 1024.41 contains a private cause of action for violations. Section 1024.41 states in pertinent part that "[a] borrower may enforce the provisions of *this section* pursuant to section 6(f) of RESPA (12 U.S.C. 2605(f))." 12 C.F.R. § 1024.41(a)(emphasis added). This language is noticeably missing from both 12 C.F.R. §§ 1024.39 and 12 C.F.R. § 1024.36.

In analyzing causes of action for noncompliance with 12 C.F.R. § 1024.39, several courts have noted that "[u]nlike Section 1024.41, Section 1024.39 does not explicitly convey a private right of action to borrowers." Section 1024.39 "do[es] not explicitly provide a cause of action to private individuals." *Gresham v. Wells Fargo Bank, N.A.*, 642 Fed. Appx. 355, 359 (5th Cir. 2016)(also noting that it need not reach the issue of if a private cause of action could be available as the complaint failed to allege any facts to support claim.); *Solis v. U.S. Bank, N.A.*, CV H-16-00661, 2017 WL 4479957, at *4 (S.D. Tex. June 23, 2017), aff'd, 726 Fed. Appx. 221 (5th Cir. 2018)(concluding no private cause of action under either 12 C.F.R. §§ 1024.35 or 1024.39 );

*Vallier v. Nationstar Mortgage, LLC*, CV H-17-0998, 2018 WL 1319166, at *5 (S.D. Tex. Feb. 1, 2018), report and recommendation adopted, 4:17-CV-0998, 2018 WL 1322247 (S.D. Tex. Mar. 13, 2018)("no private cause of action for any violation of 12 C.F.R. §§ 1024.35 or 1024.39."). DMI respectfully submits that Plaintiffs' claims under 12 C.F.R. §§ 1024.36 and 1024.39 should be dismissed because there is no private cause of action under either section. However, DMI further submits that even if there were a private cause of action, the Second Amended Complaint would still fail to state a claim upon which relief may be granted.

**a. 12 C.F.R. § 1024.39**

As an initial matter, Plaintiffs' Complaint misstates the requirements of § 1024.39(a). According to Plaintiffs, this section "requires a mortgage loan servicer to make direct contact with borrowers by telephone or in person within thirty (30) days of the borrowers missing a mortgage payment." [Doc. 22, ¶¶ 63-64]. However, 12 C.F.R. § 1024.39(a) actually requires that "a servicer shall establish or make good faith efforts to establish live contact with a delinquent borrower no later than the 36th day of a borrower's delinquency, and again after each payment due date so long as the borrower remains delinquent." Plaintiffs Complaint alleges no facts that DMI failed to make good faith efforts to establish live contact 36 days after the payment due date. In fact, there are no facts plead to show *how* DMI violated 12 C.F.R. § 1024.39(a), given that their sole allegation is that direct contact was not made within 30 days, and this is not a requirement under this C.F.R. section.

Plaintiffs also allege that DMI "violated RESPA and [12 C.F.R. § 1024.39(b)(2)], which required Hope FCU [sic], …provide, *inter alia*, that a specific person within Hope FCU [sic] be assigned as the Plaintiffs' single point of contact, and to provide contact information for that person to Plaintiffs." [Doc. 22, ¶ 66]. 12 C.F.R. §1024.39(b)(2) requires in pertinent part that the servicer encourage the borrower to contact the servicer and provide a "telephone number to

access servicer personnel assigned pursuant to § 1024.40(a)." Plaintiffs' own Complaint details that they contacted servicer personnel via phone and that the servicer personnel provided information regarding the loan and payments on it. [Doc. 22, ¶¶ 18-19]. Notably, Plaintiffs do not allege that DMI failed to send notice as required by 12 C.F.R. §1024.39(b)(1) nor do they allege that the personnel they were in communication with were not assigned pursuant to § 1024.40(a), they only contest the veracity of the information allegedly provided. There are simply no facts plead to support Plaintiffs' contention that they were not provided with a single point of contact.

While the Court will treat all well-plead allegations as true, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Here, Plaintiffs' conclusory allegations rely solely on their recitals of the elements of the causes of action. The legal conclusions they assert are completely unsupported by factual allegations necessary for their claim that DMI violated § 1024.39. Moreover, they misstate the requirements of their claim as enumerated in the C.F.R., and in doing so have failed to plead a claim under the operative regulation. Where the facts as alleged do not permit the court to infer more than the mere possibility of misconduct, the complaint has not shown that the pleader is entitled to relief under Rule 8(a)(2). *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). DMI respectfully submits that Plaintiffs' claims for violation of 12 C.F.R. § 1024.39 fails to state a claim.

**b. 12 C.F.R. § 1024.36 and 11 U.S.C. § 2605**

Plaintiffs next allege that they sent a Request for Information on March 7, 2019, and that DMI's response failed include correspondence related to the foreclosure scheduled for February 22, 2019. [Doc. 22, ¶ 68-69]. Plaintiffs conclude that without copies of the correspondence DMI's response violated 12 C.F.R. § 1024.36(d). [Doc. 22, ¶¶ 67-70]. This assertion is incorrect. Under § 1024.36, a request "for information relating to the servicing of the mortgage loan is a request for information for purposes of this section, and a servicer must comply with all requirements applicable to a request for information with respect to such qualified written request." 12 C.F.R. § 1024.36(a). A qualified written request ("QWR") sent to a servicer must relate to the servicing of the loan and must include a statement of the reasons the borrower believes the account is in error. 12 U.S.C. § 2605(e)(1)(A); 12 U.S.C. § 2605(e)(1)(B)(ii). Servicing is specifically defined under RESPA as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts...and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of loan." 12 U.S.C. § 2605(i)(3).

Here, Plaintiffs have failed to demonstrate that the alleged deficiency gives rise to the purported violation. They simply state that they requested "all correspondence to or from the borrower related to the initiation of foreclosure in the past six months." [Doc. 22, ¶ 67]. Such request is outside the purview of § 1024.36(a). In interpreting, this provision of RESPA, Courts in the Eleventh Circuit, the Court has found that requests that do not cite to a servicing error, do not require a response from a servicer. *Hudgins v. Seterus*, Inc., 192 F. Supp. 3d 1343, 1352 (S.D. Fla. 2016)(claim under 12 C.F.R. § 1024.36(d); citing *Sirote v. BBVA Compass Bank*, 857 F. Supp. 2d 1213, 1221 (N.D. Ala. 2010), aff'd, 462 Fed. Appx. 888 (11th Cir. 2012)(claim under

15 U.S.C. § 2605(e) QWR requirements). For its part, Fifth Circuit courts have also found that a servicer must respond to a QWR "only if it seeks 'information relating to the servicing of [the] loan' [as defined in §2605(i)(3)]." *Geoffrion v. Nationstar Mortgage LLC*, 182 F. Supp. 3d 648, 657 (E.D. Tex. 2016). Where a Plaintiff sends a request for copies of documents but fails among other things to state the reasons for the belief the account was in error, it fails to meet the requirements of a qualified written request. *Hurd v. BAC Home Loans Servicing*, *LP*, 880 F. Supp. 2d 747, 768 (N.D. Tex. 2012). Plaintiffs' request for copies of communications fails to state the belief for error as required above and fails to request information related to the RESPA definition of servicing. Therefore, even if DMI failed to include all correspondence as Plaintiffs contend, DMI was not required to provide responsive material for the portion of the request that was deficient.

Lastly, "[i]n order to state a claim for a violation of § 2605, a plaintiff must allege that the breach resulted in actual damages." *Hopson v. Chase Home Fin. LLC*, 14 F. Supp. 3d 774, 788 (S.D. Miss. 2014), aff'd sub nom. *Hopson v. Chase Home Fin., L.L.C.*, 605 Fed. Appx. 267 (5th Cir. 2015). Therefore, as an essential element of a RESPA claim, "a claimant must show that actual damages resulted from a RESPA violation." *Whittier v. Ocwen Loan Servicing, L.L.C.*, 594 Fed. Appx. 833, 836 (5th Cir. 2014); 11 U.S.C. § 2605(f)(1)(A); *see Hurd v. BAC Home Loans Servicing, LP*, 880 F. Supp. 2d 747, 768 (N.D. Tex. 2012). Plaintiffs allege that they suffered damages in that they lost "the opportunity to modify or reinstate their home mortgage loan." [Doc. 22, ¶ 71]. However, the request for information was sent *after* the foreclosure sale was complete. DMI's alleged failure to include certain correspondence *could not* have affected their ability to modify or reinstate a loan that had already been foreclosed upon. "The burden is on the borrower to prove that he or she incurred actual damages in order to substantiate a RESPA

claim." *Geoffrion v. Nationstar Mortgage LLC*, 182 F. Supp. 3d 648, 662 (E.D. Tex. 2016). In this case, Plaintiffs' Second Amended Complaint is completely lacking in factual allegations regarding any actual damages they have suffered.

A "RESPA claim may be dismissed for failure to allege facts showing how Defendant's failure resulted in any actual damages or the amount of such damages." *Hopson v. Chase Home Fin. LLC*, 14 F. Supp. 3d 774, 788 (S.D. Miss. 2014), aff'd sub nom. *Hopson v. Chase Home Fin., L.L.C.*, 605 Fed. Appx. 267 (5th Cir. 2015). Accordingly, as Plaintiffs have failed to allege a required element necessary to obtain relief on their RESPA claim, DMI respectfully submits that Plaintiffs' RESPA claim must be dismissed.

**C. Plaintiffs have Failed to State a Claim for Breach of Contract**

Plaintiffs assert that the Deed of Trust is a written contract between Plaintiffs and HOPE FCU and that Hope FCU instituted foreclosure proceedings against Plaintiffs without proper notice in breach of the terms of the Deed of Trust. [Doc. 22, ¶¶ 53, 75, 78, 81]. "Mississippi law is clear that, in order to maintain an action to enforce a breach of contract or to recover damages growing out of a breach, a relationship of privity of contract must exist between the party damaged and the party sought to be held liable for the breach." *Saucier v. Coldwell Banker JME Realty*, 644 F. Supp. 2d 769, 780 (S.D. Miss. 2007), aff'd sub nom. *Saucier v. Coldwell Banker Joseph M. Endry Realty*, 291 Fed. Appx. 674 (5th Cir. 2008). The Complaint completely fails to assert any contract between Plaintiffs and DMI. Under Mississippi law, "[a] claim for breach of contract has two elements: 1) the existence of a valid and binding contract; and 2) breach by defendant." *Bus. Commc'ns, Inc. v. Banks*, 90 So. 3d 1221, 1224–25 (Miss. 2012); *Cook v. Wallot*, 172 So. 3d 788, 800 (Miss. Ct. App. 2013). Plaintiffs' Second Amended Complaint does not state that DMI was a party to a valid and binding contract, that it breached a contract

provision, or how it is in privity with Plaintiffs beyond a previous mention that servicing transferred to DMI in 2018. Notably, the Deed of Trust, which is attached to the Second Amended Complaint, contains only covenants between the "Borrower and Lender." *See* [Doc. 22-1, p. 3]. This does not create any privity between the Plaintiffs and DMI. Although there do not appear to be any Mississippi decisions on this issue, other courts around the country appear to be uniform in their conclusions that loan servicers are not in privity of contract with mortgagees. *See, e.g., Hegedus v. Nationstar Mortg. LLC*, No. 5:17-CV-00053, 2018 WL 1465268, at *10 (W.D. Va. Feb. 1, 2018), *report and recommendation adopted*, No. 5:17-CV-00053, 2018 WL 1461747 (W.D. Va. Mar. 23, 2018); *Mazzei v. Money Store*, 308 F.R.D. 92, 109-110 (S.D.N.Y. 2015) (collecting cases); *Conder v. Home Savings of Am.*, 680 F. Supp. 2d 1168, 1174 (C.D. Cal. 2010) (citations omitted); *Ruff v. America's Servicing Co.*, No. 07-0489, 2008 WL 1830182, at *3-4 (W.D. Pa. April 23, 2008).

Further, the Second Amended Complaint specifically states that Hope FCU breached the terms of the contract and that Hope FCU instituted foreclosure proceedings. [Doc. 22, ¶¶ 53, 81, 78]. Plaintiffs do not allege that DMI breached the agreement or instituted foreclosure proceedings. Because Plaintiffs' Second Amended Complaint fails to assert any contract, privity, or breach on behalf of DMI, DMI respectfully requests that this count be dismissed.

**D. Plaintiffs have Failed to establish a Claim under the FDCPA**

Plaintiffs assert that DMI violated §1692e, § 1692f, and § 1692e of the Fair Debt Collection Practices Act ("FDCPA"). [Doc. 22, ¶¶ 87-90]. In order to state a claim under the FDCPA, a Plaintiff must first establish that "defendant is a debt collector as defined by the FDCPA." *Sibley v. Firstcollect, Inc.*, 913 F. Supp. 469, 471 (M.D. La. 1995); *Meyer v. Turner*, 1:13-CV-443-JCG, 2015 WL 7300562, at *2 (S.D. Miss. Nov. 18, 2015), judgment entered,

1:13-CV-443-JCG, 2015 WL 7307135 (S.D. Miss. Nov. 18, 2015); *Neel v. Fannie Mae*, No. 1:12cv311-HSO-RHW, 2014 WL 977328, *9 (S.D. Miss. Mar. 12, 2014). In fact, if the defendant does not meet the FDCPA definition of a debt collector, the "provisions of the Act do not apply." *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029, 1031 (2019); *see also Fouche' v. Shapiro & Massey L.L.P.*, 575 F. Supp. 2d 776, 783 (S.D. Miss. 2008)("The prohibitions of the FDCPA apply only to 'debt collectors.'"). Therefore, establishing that Defendant is a debt collector as defined by the FDCPA is an essential element of any FDCPA claim.

Plaintiffs make the conclusory assertion that DMI is a debt collector as it is defined by the FDCPA because it is "a person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." [Doc. 22, ¶ 4]. However, this is simply a recitation of the definition of a debt collector. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964–65. Plaintiffs then allege that DMI is a person who uses the U.S. Mail and telephone networks to aid in collection of debts owed to others. [Doc. 22, ¶ 85]. Again, Plaintiffs allege no facts to indicate a use of interstate commerce or the mail by DMI as an attempt to collect debt. It is well established that a Complaint cannot contain a recitation of the elements of a cause of action and naked assertions devoid of any factual enhancement. *See Iqbal*, 556 U.S. at 678 (2009).

Plaintiffs completely fail to identify how DMI ever acted as a debt collector. The majority of Plaintiffs' complaint focuses on communications they assert DMI *did not* send. [Doc. 22, ¶¶ 64, 66]. Similarly, Plaintiffs state that they submitted their payments to HOPE FCU and

that HOPE FCU returned them. [Doc. 22, ¶¶ 17, 22, 27]. DMI's only identified participation according to Plaintiffs' allegations is that payments were sent to HOPE FCU using DMI's address. [Doc. 1-1, ¶¶ 17, 22]. There are simply not facts by which one could conclude that DMI used commerce or the mail to collect debt or that it regularly collects or attempts to collect debt, as alleged by Plaintiffs. [Doc. 22, ¶¶ 4, 85]. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964–65; *Barlow v. Safety Nat. Cas. Corp.*, 856 F. Supp. 2d 828, 836 (M.D. La. 2012). Because Plaintiffs' FDCPA claim against DMI fails to allege any facts that could support the conclusion that it meets the definition of a debt collector under the FDCPA, Plaintiffs have failed to state a claim upon which relief may be granted.

Further, even if Plaintiffs' claim under the FDCPA were to survive, the Plaintiffs only make a conclusory assertion that they "are entitled to recover actual damages" with absolutely no facts alleged to support that they have incurred any actual damages. [Doc. 22, ¶ 91].

> The FDCPA provides that any debt collector who fails to comply with the FDCPA with respect to any person is liable to such person for (1) any actual damages sustained by the person as a result of such failure; (2) statutory damages as the Court may allow, but not exceeding $1,000; and (3) the costs of the action, together with a reasonable attorney fee as determined by the Court.

*Meyer*, 2015 WL 7300562, at *4.

"[S]everal Courts of Appeal have . . . concluded that consumers may recover statutory damages for violations of the FDCPA even in the absence of any 'actual damages.'" *Abernathy v. NCC Bus. Servs., Inc.*, No. 2:11-CV-219-SA-SAA, 2012 WL 4320810, at *3 (N.D. Miss. Sept. 18, 2012) (collecting cases). However, the recovery of actual damages is not permitted unless a plaintiff sets forth sufficient allegations in their complaint supporting such damages. *Douglas v.*

*Southstar Funding, LLC*, No. 1:18-CV-1802-MLB-JSA, 2018 WL 6136792, at *8 (N.D. Ga. Oct. 18, 2018) (citing *Emanuel v. Am. Credit Exch.*, 870 F.2d 805, 809 (2d Cir. 1989)) (citations omitted). Because the Plaintiffs have pleaded no facts in support of their skeletal claim for actual damages, this Court should find that even if the FDCPA claim can survive this motion, that it can proceed only as to possible statutory damages.

**E. Plaintiffs have Failed to State a Claim for Emotional Distress**

Plaintiffs final claim alleges that DMI engaged in outrageous conduct by failing to comply with the contractual prerequisites to foreclosure and that this caused them to suffer severe emotional distress. [Doc. 22, ¶¶ 93-94]. In analyzing claims for emotional distress, the Court applies the same standard it uses for mental anguish and uses the two terms interchangeably. *Wilson v. Gen. Motors Acceptance Corp.*, 883 So. 2d 56, 64 (Miss. 2004). A claim for negligent infliction of emotional distress, requires that the Plaintiff "plead and prove 'some sort of injury or demonstrable harm, whether it be physical or mental, and that harm must have been reasonably foreseeable to the defendant.'" *Breeden v. Buchanan*, 164 So. 3d 1057, 1069 (Miss. Ct. App. 2015); *quoting Am. Bankers' Ins. Co. of Fla. v. Wells, 819 So.2d 1196, 1208 (*¶ *40)* (Miss. 2001).

Here, Plaintiffs do not assert any manifestations of physical harm or injury, instead they allege that they have been harmed "emotionally, and mentally, and are in imminent fear of losing their home." [Doc. 22, ¶ 33]. Generally, Plaintiffs "may not recover emotional distress damages resulting from ordinary negligence without proving some sort of physical manifestation of injury or demonstrable physical harm." *Wilson v. Gen. Motors Acceptance Corp.*, 883 So. 2d 56, 65 (Miss. 2004); *American Bankers' Ins. Co. of Fla. v. Wells*, 819 So.2d 1196, 1209 (Miss.2001). However, absent physical injury, "[r]ecovery for mental anguish can be allowable…where the

defendant's conduct is outrageous or evokes outrage or revulsion." *Wilson v. Gen. Motors Acceptance Corp.*, 883 So. 2d 56, 65 (Miss. 2004). Recovery "requires conduct so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community." *Morrison v. Means*, 680 So. 2d 803, 805–06 (Miss. 1996).

Plaintiff's have failed to plead that any conduct by DMI meets the standard for extremity. Instead, the majority of Plaintiffs' Complaint identifies acts or omissions allegedly committed by HOPE FCU. Plaintiffs contend that HOPE FCU failed to send certain notices required under the Deed of Trust and RESPA. Plaintiffs also allege that Plaintiff Brandi Bryant contacted either HOPE FCU or DMI and was informed by one of the Defendants that she was delinquent one payment but did not mention any acceleration. [Doc. 22, ¶¶ 18-21]. As to DMI alone, Plaintiffs allege it failed to send certain FDCPA and RESPA notices. However, in *Breeden*, the court determined that a Complaint alleging failure to pay insurance proceeds, delay in the claim, and refusal to discuss the claim with Plaintiff failed to plead conduct constituting the tort of negligent infliction of emotional distress and may be dismissed under 12(b)(6). *Breeden v. Buchanan*, 164 So. 3d 1057, 1069–70 (Miss. Ct. App. 2015). DMI respectfully submits that as in *Breeden*, the alleged failures to send RESPA notices, and even the allegations regarding phone calls and contractual notices not specifically alleged against DMI, do not rise to the level of outrageous conduct necessary to support an NIED claim. Accordingly, the claim for Negligent Infliction of Emotional Distress must be dismissed.

**CONCLUSION**

Based on the foregoing, DMI respectfully requests that this Court grant its Motion to Dismiss.

Respectfully submitted, this 16th day of July 2019.

/s/ Amanda M. Beckett
AMANDA M. BECKETT MS Bar No. 102738
**RUBIN LUBLIN, LLC**
428 North Lamar Blvd., Suite 107
Oxford, Mississippi 38655
(601) 398-0153 (Telephone)
(404) 921-9016 (Facsimile)
abeckett@rubinlublin.com

*Attorney for Dovenmuehle Mortg., Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that I have, this 16th day of July 2019, filed the within and foregoing by CM/ECF, which will serve notice on all parties.

*/s/ Amanda M. Beckett*
AMANDA M. BECKETT (MS Bar No. 102738)